**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

RONALD E. WILLIAMS,

                Plaintiff,                No. 1:18-CV-1430
                                                (MAD/CFH)

    v.

SERVICE TIRE TRUCK CTR.,

                Defendant.

---

**APPEARANCES:**

Ronald E. Williams
15 Campus View Drive
Loudonville, New York 12211
Plaintiff pro se

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER

    Plaintiff pro se Ronald E. Williams commenced this action on December 11, 2018, against defendant Service Tire Truck Center. See Dkt. No. 1. Presently pending before the Court is a review of plaintiff's amended complaint pursuant to § 1915(e)(2)(B). Dkt. No. 10 ("Am. Compl.").

### I. Background

    Following an initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2), the undersigned granted plaintiff's In Forma Pauperis ("IFP") application and recommended that (1) plaintiff's hostile work environment claim pursuant to Title VII

proceed; (2) plaintiff's racial discrimination claim pursuant to Title VII be dismissed without prejudice and with opportunity to amend to allege facts demonstrating that plaintiff's demotion and deduction in pay were due to his race or color; and (3) plaintiff's claim that he faced unequal terms and conditions of employment due to his race pursuant to Title VII be dismissed without prejudice and with opportunity to amend to adequately allege facts demonstrating that there were other similarly-situated employees outside of plaintiff's protected class who engaged in substantially similar conduct and received preferential treatment.  Dkt. No. 8 at 9-10.

On May 31, 2019, United States District Judge Mae A. D'Agostino adopted the Report-Recommendation and Order in its entirety.  Dkt. No. 9.  In the Order, Judge D'Agostino advised plaintiff that should he file an amended complaint, the "amended complaint will supersede and replace the original complaint in its entirety," and that the amended complaint "must properly allege in the amended complaint all factual bases for all claims asserted therein."  Id. at 5 n.1.  Judge D'Agostino further directed that if plaintiff timely filed an amended complaint, it be forwarded to the undersigned for review.  Id. at 5.  On June 25, 2019, plaintiff filed an amended complaint.  Dkt. No. 10 ("Am. Compl.").

### 1. Additional Factual Background[1]

Plaintiff is "an African male" who works as a service technician/outside service

---

[1] For a full review of the facts alleged in this matter, reference is made to the January 16, 2019 Report-Recommendation and Order (Dkt. No. 8) and to the complaint, see Dkt. No. 1.

2

technician for Service Tire Truck Center. Am. Compl. at 1. When he was hired, he was the only African-American male working at that branch. Id. As a service technician/outside service technician, plaintiff's job duties included repairing and/or changing tires on the road and in the shop, delivering tires and rims to customers, stocking tire deliveries, and responding to nighttime "road calls" while on call. Id.

At the time he was hired in July 2014, plaintiff and five Caucasian males held the same position and performed the same job duties. Am. Compl. at 1. Plaintiff contends that from July 2014 to May 2017, store manager Thomas Kelly distributed the workload "pretty much evenly" among the service technicians. Id. Plaintiff alleges that he performed his job to the satisfaction of Mr. Kelly "insomuch that he verbally praised [plaintiff's] work ethics and performance." Id.

In March or April 2017, Mr. Kelly hired Michael Osi, an African-American male, as a part-time in-house service technician. Am. Compl. at 1. In May 2017, Mr. Kelly hired George Burch, an African-American male, as a "warehouse supervisor or manager." Id. Sometime after hiring Mr. Burch, Mr. Kelly was fired and replaced by Frank Washburn, a Caucasian male. Id. at 1-2. Three days after Mr. Washburn was hired, he fired Mr. Burch. Id. at 2. Plaintiff alleges that Mr. Washburn claimed that he fired Mr. Burch because he called out sick. Id. Mr. Kelly never disciplined Mr. Burch or terminated his employment when he called out sick. Id. When Mr. Burch informed Mr. Washburn that the previous manager had permitted him to call out sick, Mr. Washburn stated that he had fired Mr. Burch because he believed that Mr. Burch was incapable of doing his job. Id. Plaintiff contends that Mr. Washburn fired Mr. Burch because he was

3

African-American, and gave Mr. Burch's job to his Caucasian neighbor who had no experience.  Id.  Plaintiff alleges that a few weeks after Mr. Burch was fired, Mr. Osi quit because he was "verbally attacked" by a Caucasian employee.  Id.

Plaintiff contends that he is the only African-American male employee left, and feels that he is "going to be terminated based on the disparate treatment exhibited by the store manager and by the hostile working environment created by Caucasian employees."  Am. Compl. at 2.  After Mr. Osi quit, plaintiff alleges that he was assigned approximately eighty-five percent of the daily workload.  Id.  Plaintiff alleges that the Caucasian male service technicians were only assigned "road calls" and "h[u]ng out" in the office with Mr. Washburn after they returned.  Id.  When plaintiff raised his concerns about the disparate treatment and unequal distribution of work, Mr. Washburn ignored plaintiff and told him to "do [his] job."  Id.  Plaintiff also performed the duties of the service manager when he was out of the office and answered telephone calls.  Id.  Plaintiff was the only employee tasked with these additional duties.  Id.  As such, plaintiff alleges that "on any given day, [he] changed approximately 20 to 50 tires while [his] Caucasian co workers changed approximately 1 to 10 tires a day."  Id.

Plaintiff further alleges that he was compensated differently from his Caucasian co-workers.  Am. Compl. at 2.  On July 5, 2017, plaintiff arrived at work in his civilian clothes like the other service technicians.  Id.  Plaintiff contends that service technicians generally "punch-in" prior to changing into their work uniforms because the uniforms are located in their lockers.  Id.  On that day, Mr. Washburn, the service manager Joe Bacon, and another service technician Joe Bennett, a Caucasian male, were waiting for

4

plaintiff in the lobby.  Id.  Mr. Bennett was not in his work uniform, but had "punched-in" for the day.  Id.  Mr. Washburn instructed plaintiff to change into his work uniform before he "punched-in," but did not direct Mr. Bennett to change into his work uniform.  Id.  Plaintiff asked Mr. Washburn if he had a "problem" with him, and Mr. Washburn responded, "no I don't, matter fact I do."  Id. at 3.  Mr. Washburn continued, "you don't do no work."  Id.  Plaintiff responded that he did a majority of the work, while other employees did not perform any work.  Id.  Mr. Washburn told plaintiff, "don't worry about them, worry about yourself.  I'm going to demote you and take three dollars of your pay [i]f you don't pick up the pace."  Id.  Plaintiff "replied that [Mr. Washburn] [couldn't] do that."  Id.  Mr. Washburn informed plaintiff that he could "do what [he] want[ed] [because] [he was] the boss."  Id.

   Plaintiff contends that this July 5, 2017, meeting demonstrates that Mr. Washburn was attempting to find any reason to fire, demote, or reduce his pay because he was the last remaining African-American male employed at the company.  Am. Compl. at 3.  Plaintiff contends that Mr. Washburn's actions "changed the conditions of his employment because [he] was treated differently, [his] work assignments, workload and now compensation [were] affected because of [his] race."  Id.  Plaintiff contends that his Caucasian co-workers were not subjected to this disparity in treatment, reduction or threat of reduction in pay or compensation, or assigned additional duties outside of the scope of their normal work tasks.  Id.  He also contends that his Caucasian co-workers were not subjected to a hostile working environment because of their race.  Id.

5

## II. Review of the Amended Complaint[2]

### 1. Race Discrimination

In the January 16, 2019, Report-Recommendation and Order, the undersigned recommended that plaintiff be granted an opportunity to amend his complaint to allege facts demonstrating that his demotion and deduction in pay were linked to his race or color. See Dkt. No. 8 at 7. Plaintiff sets forth facts demonstrating circumstances that give rise to an inference of discrimination. He describes an environment wherein two African-American male employees were either fired or forced to quit allegedly due to harassment, and that, after the two African-American employees left, plaintiff – the only remaining African-American employee – was directed to perform eighty-five percent of the workload, as well as additional tasks outside the scope of his duties. See Am. Compl. at 1-3. However, the undersigned notes that plaintiff has failed to demonstrate that he was subject to an adverse action.

The amended complaint expands on plaintiff's July 5, 2017, conversation with Mr. Washburn, stating that Mr. Washburn told him, "I'm going to demote you and take three dollars of your pay [i]f you don't pick up the pace." Id. Plaintiff does not allege that the demotion or deduction in pay actually occurred, and later indicates that his Caucasian coworkers were not subject to a "reduction or *threat* of reduction in pay or compensation." Am. Compl. at 3 (emphasis added). Thus, the amended complaint

---

[2] Title VII applies to employers with fifteen or more employees. See 42 U.S.C.A. § 2000e(b). Plaintiff does not specify whether the defendant company has fifteen or more employees. The undersigned cautions plaintiff that should the parties discover that the defendant company has fewer than fifteen employees, his action may be subject to dismissal.

6

suggests plaintiff was only threatened with a reduction in pay or demotion.  "The vast majority of courts in this circuit have held that a threat [ ] alone does not constitute an adverse employment action." Mitchell v. SUNY Upstate Med. Univ., 243 F. Supp. 3d 255, 281 (N.D.N.Y. 2017), aff'd sub nom. Mitchell v. State Univ. of New York Upstate Med. Univ., 723 F. App'x 62 (2d Cir. 2018) (summary order) (quoting Tompkins v. Allied Barton Sec. Servs., No. 09 Civ. 1954 (RMB)(JLC), 2010 WL 3582627 at *5 n.6 (S.D.N.Y. Aug. 2, 2010), report-recommendation adopted 2010 WL 3582621 (S.D.N.Y. Sept. 13, 2010), aff'd 424 F. App'x 42 (2d Cir. 2011) (summary order) (quotation marks omitted); see Bowles v. New York City Transit Auth., Nos. 00 Civ. 4213, 03 Civ. 3073 (BSJ)(MHD), 2006 WL 1418602, at *10 (S.D.N.Y. May 23, 2006) (collecting cases for the proposition that "[i]n this Circuit, most courts that have faced the issue have decided that an unrealized threat of discipline or termination is not actionable under Title VII"). Thus, to the extent that Mr. Washburn threatened to demote plaintiff and/or reduce his pay, this does not rise to the level of adverse action under Title VII.  Accordingly, it is recommended that plaintiff's Title VII claim, insofar as he alleges that he was threatened with demotion and/or received reduced compensation be dismissed without prejudice and with an opportunity to amend at a future point should plaintiff experience a change in circumstances.

To the extent that plaintiff alleges that his increased assignments and workload amount to adverse action, the undersigned reaches a different result.  At this early stage in the litigation, plaintiff has adequately demonstrated "adverse action occurred [that] under circumstances giving rise to an inference of discrimination." Benedith v.

7

Malverne Union Free Sch. Dist., 38 F. Supp. 3d 286, 317 (E.D.N.Y. 2014). "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the [adverse employment action].'" Littlejohn v. City of New York, 795 F.3d 297, 312 (2d Cir. 2015) (quoting Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009)). "Such [ ] evidence may include direct or circumstantial evidence of discrimination." Schupbach v. Shinseki, 905 F. Supp. 2d 422, 430 (E.D.N.Y. 2012).

Plaintiff alleges that he was directed to perform a majority of the workload — changing five times more tires per day than his Caucasian coworkers — as well as tasks outside of the scope of his regular duties. Am. Comp. at 2. While plaintiff performed a majority of the work, Caucasian service technicians performed "road calls" and "hung out" in Mr. Washburn's office. Id. Plaintiff indicated that such disparity in work assignments only occurred after Mr. Washburn became supervisor and after two other African-American male employees had been fired or forced to quit due to alleged race-based harassment. See id. As such, the undersigned concludes that, at this early stge, these allegations constitute circumstantial evidence supporting an inference of discrimination under Title VII. See Cincotta v. Hempstead Union Free Sch. Dist., 313 F. Supp. 3d 386, 406 (E.D.N.Y. 2018) (concluding, in a Title VII case, that the fact that an all African-American Board of Education and an African-American Superintendent voted to relieve the Caucasian plaintiff of his duties constituted "circumstantial evidence

8

supporting an inference of discrimination.") (citing <u>Benedith v. Malverne Union Free Sch. Dist.</u>, 38 F. Supp. 3d 286, 318 (E.D.N.Y. 2014) (considering, as "circumstantial evidence" supporting a prima facie case of race discrimination, the fact that when an African-American employee was terminated, "ten of the eleven District Administrators were white," in addition to the essential fact that "after [the plaintiff's] termination, her job duties . . . were assumed by [another individual], who is white.")).

Accordingly, it is recommended that plaintiff's Title VII race discrimination claim, insofar as he alleges that he received additional work assignments and a greater workload than his Caucasian coworkers because of his race or color, survive initial review. However, the undersigned makes no finding as to whether the claim would survive a properly-supported dispositive motion.

### 2. Unequal Terms and Conditions of Employment[3]

In the January 16, 2019, Report-Recommendation and Order, the undersigned recommended that plaintiff be granted an opportunity to amend to demonstrate that the defendant company subjected him to unequal terms and conditions of employment by specifying whether there were other similarly-situated employees, outside of his protected class, who engaged in similar conduct but received preferential treatment. Dkt. No. 9 at 9. Plaintiff must also "establish that: (1) he belongs to a protected class of

---

[3] A claim for unequal terms and conditions of employment under Title VII requires a similar analysis as a claim for race discrimination under Title VII; however, "[t]o establish this claim, plaintiff must show that there were other similarly situated employees, outside of the protected class, who engaged in conduct substantially similar to that of plaintiff but received preferential treatment." <u>Vanhorne v. New York City Transit Auth.</u>, 273 F. Supp. 2d 209, 216 (E.D.N.Y. 2003).

9

persons; (2) his job performance was satisfactory; (3) he suffered some adverse employment action; and (4) the adverse employment action occurred under conditions giving rise to an inference of discrimination." Holder v. City of Yonkers, No. 04 CIV. 10314(LMS), 2006 WL 1582081, at *8 (S.D.N.Y. June 7, 2006) (citation omitted).

It is clear that, as an African-American person, plaintiff belongs to a protected class under the Title VII framework. See Johnson v. Long Island Univ., 58 F. Supp. 3d 211, 221 (E.D.N.Y. 2014) (denoting that, as an African-American, the plaintiff was a member of a protected class). Moreover, as to whether his job performance was satisfactory, plaintiff contends that he received consistent praise for his work under his former supervisor. See Am. Compl. at 1. As to the third and fourth prongs, plaintiff alleges that he was directed to perform substantially more work than his Caucasian coworkers who held the same job title. Id. As demonstrated above, these allegations constitute circumstantial evidence supporting an inference of discrimination based on plaintiff's race or color as plaintiff was directed to perform work than his Caucasian coworkers. See supra, at 8. As to whether Caucasian employees received preferential treatment, see Vanhorne, 273 F. Supp. 2d at 216 ("To establish this claim, plaintiff must show that there were other similarly situated employees, outside of the protected class, who engaged in conduct substantially similar to that of plaintiff but received preferential treatment."), plaintiff also alleges that Mr. Washburn directed him not to clock-in for work until he changed into his work uniform, but allowed a Caucasian service technician to clock-in dressed in his civilian clothes. See Am. Compl. at 1. Plaintiff further indicates that Caucasian employees performed only road calls and then "hung out" in

10

Mr. Washburn's office, and that he was the only employee tasked with performing the duties of the service manager when that employee was absent. Id. at 2. Plaintiff contends that, prior to this instance, it had been the general practice to allow service technicians to clock in before changing into their work uniforms. Id.

At this early stage in the litigation, the undersigned concludes that plaintiff has plausibly alleged that his Caucasian coworkers received preferential treatment, and that the defendant company subjected him to adverse employment actions "under conditions giving rise to an inference of discrimination." Holder, 2006 WL 1582081, at *8; Vanhorne, 273 F. Supp. 2d at 216. As such, it is recommended that plaintiff's claim for unequal terms and conditions of employment in violation of Title VII be permitted to proceed. The undersigned makes no finding as to whether the claim would survive a properly-supported dispositive motion.

### III. Conclusion[4]

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that

> (1) Plaintiff's race discrimination claim pursuant to Title VII relating to an increase in work assignments and/or workload based on his race or color proceed;
>
> (2) Plaintiff's unequal terms and conditions of employment claim pursuant

---

[4] For the reasons set forth in the undersigned's January 16, 2019, Report-Recommendation and Order, plaintiff's Title VII hostile work environment claim proceed as repleaded in the amended complaint.

11

>to Title VII proceed;
>
>(3) Plaintiff's race discrimination claim pursuant to Title VII as to his alleged threat of demotion and/or reduction in pay be **DISMISSED without prejudice** and with opportunity to amend in the future should plaintiff demonstrate a change in circumstances; and it is

**ORDERED**, that following the District Judge's review of this Report-Recommendation and Order, should the District Judge adopt the Report-Recommendation and Order, the filing at dkt. no. 10 will be deemed the operative pleading, absent the facts and/or claims deemed stricken or already dismissed by a prior order of this Court, and that the Clerk's Office is to then return this case to the Magistrate Judge to order service of the amended complaint and summonses upon defendant by the United States Marshals; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs.,

12

892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[5]

Dated: July 24, 2019
      Albany, New York

*/s/ Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge

---

[5] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

13